UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRY BRUMMELL,

                Plaintiff,                     **DECISION**

v.                                        **and ORDER**

WEBSTER CENTRAL SCHOOL DISTRICT,        06-CV-6437
TRANSPORTATION DEPARTMENT,

                Defendant.
_____

## INTRODUCTION

Plaintiff Terry Brummell, ("Brummell"), brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.), and the New York State Human Rights Law against her former employer Webster Central School District, ("Webster" or "the School District") claiming that she was retaliated against for complaining of gender discrimination. Specifically, plaintiff claims that after she complained to her supervisors of discriminatory treatment, she was subjected to retaliatory behavior which forced to her to quit her employment.

Defendant denies plaintiff's allegations, and moves for summary judgment dismissing plaintiff's Complaint on grounds that plaintiff has failed to state a prima facie case of retaliation. According to the defendant, Brummell can not establish that she engaged in any protected activity, or that she suffered any retaliatory conduct. For the reasons set forth below, I grant

defendant's motion for summary judgment, and dismiss plaintiff's Complaint in its entirety.

BACKGROUND

Plaintiff Terry Brummell began working as a bus driver for the defendant Webster Central School District in 1984.  Nineteen years later, in 2003, Scott Daniels, ("Daniels") the Manager of Transportation for the Webster Central School District, recommended plaintiff and another woman for promotions to two new positions created in the District.  The positions were as Head Bus Driver/ Safety Coordinators, and plaintiff accepted the position in May, 2003.  Though the job plaintiff accepted was a full-time position, it ran for only 10 months and 20 days out of the year, as opposed to a full 12 months.

Within six months of taking the position, plaintiff began lobbying to have the position changed to a twelve month position.  According to the plaintiff, she sought the change because of her heavy workload.  Eventually, during the 2004-2005 school year, plaintiff's position was changed to an eleven-month position, but at no time was the position changed to a twelve-month position.  Although the position remained an eleven month position, plaintiff was entitled to receive overtime compensation, and indeed, between May 7, 2003 and April 29, 2005, plaintiff requested 490.95 hours worth of overtime, the equivalent of over 11 weeks of time based on a 40-hour work week.

Daniels believed that plaintiff's requests for overtime were excessive, and on April 29, 2005, Daniels informed Brummell that he was no longer authorized to approve her overtime requests. Shortly thereafter, plaintiff drafted a letter to Daniels, as well as to Daniels' supervisors complaining that she was being treated unfairly because her job was an eleven-month position, and not a twelve-month position. Plaintiff did not complain in the letter that she was being treated unfairly based on her gender, and in any event, plaintiff never sent the letter to anyone.

Throughout 2005, plaintiff investigated several job openings for twelve-month positions outside of the Webster Central School District. In February 2005, plaintiff sought information related to a newly-posted Director of Transportation position in Fairport, New York. The next month, plaintiff sought a position with an Albany, New York area school district. In July and August, 2005, plaintiff made inquiries into positions in the Red Creek, New York, and Byron-Bergen, New York, school districts.

In April, 2005, plaintiff contacted Assistant Superintendent for Administration and Personnel John Carlevatti (Carlevatti) to inform him that a female co-employee felt insulted by Daniels. Brummell, however, did not make any complaints on her own behalf about Daniels. Deposition Transcript of Terry Brummell at p. 138-139. In May, 2005, Brummell approached Daniels and accused him of treating her differently than other people in the office.

Deposition Transcript of Terry Brummell at p. 63, lns. 7-10, p. 64, lns. 12-16, p. 153, lns. 9-17.[1]  Although Brummell did not explain to Daniels the basis for her accusation, she made the accusation after Daniels had allegedly: (1) rearranged files on her desk when she was out of the office; (2) removed personal articles from her desk; and (3) informed plaintiff that he could no longer approve her overtime requests.  Deposition Transcript of Terry Brummell at pp. 56, 59, 62-63, 64.  Brummell also contends that prior to the meeting, all of the office staff except for her and a male co-worker received new flat screen computer monitors.  Deposition Transcript of Terry Brummell at p. 57, p. 157, lns. 10-22. Plaintiff admitted that she had not complained of Daniels' behavior to any manager or supervisor prior to meeting with Daniels. Deposition Transcript of Terry Brummell at pp. 65-67,  p. 121, lns 5-19.

In September, 2005, plaintiff claims that she was asked by a co-worker to falsify test results for a bus driver, thus denying him certification.  According to Brummell, Dick Swingly asked her to add five seconds to a timed test for bus driver John DeRoo, thus ensuring that he would not be able to pass the test and gain certification.  Plaintiff claims that she was appalled by the request, and informed Assistant Superintendent Carlevatti of what

---

[1] Although plaintiff now claims in an affidavit submitted in opposition to defendant's motion for summary judgment that she complained to Daniels that she was being treated differently than male employees, plaintiff made no such claim in her deposition testimony.

she had been asked to do.  Carlevatti initiated an investigation of plaintiff's claims, and even informed the local police regarding plaintiff's allegation.  The police declined to investigate the matter, and Carlevatti was unable to substantiate plaintiff's claims.  Deposition Transcript of John Carlevatti at p. 45.

According to the plaintiff, after she complained to Carlevatti about being asked to falsify test results, she was retaliated against by Daniels.  Specifically, plaintiff stated that after she refused to falsify John DeRoo's test results "I felt that I was being retaliated against terribly."  Deposition Transcript of Terry Brummell at p. 115.  When asked when she believed the retaliation began, she stated that "[i]t happened after Dick Swingly had asked me to take over and do [John DeRoo's] Test, and I said no.  And Dick ran in and told Scott [Daniels] that I said no.  And that – it all got really bad after that."  Deposition Transcript of Terry Brummell at p. 146.  See also Deposition Transcript of Terry Brummell at p. 157 ("After I told [Dick] Swingly no, and Dick told Scott [Daniels] I was refusing [to falsify test results] then every thing got really bad and continued through when I went to Carlevatti.")  Plaintiff claims that after she refused to falsify John DeRoo's test results, Daniels informed her (but no other employee) that she could no longer eat at her desk.  Deposition Transcript of Terry Brummell at p. 84.

Thereafter, at the end of September, 2005, Brummell complained to Carlevatti that Daniels treated her differently than other employees. Deposition Transcript of John Carlevatti at p. 42, 34. Carlevatti initiated an investigation of plaintiff's claims, and held a meeting with Brummell and Daniels. Deposition Transcript of John Carlevatti at p. 43, lns. 9-11. Carlevatti concluded that Daniels' expectations of Brummell were not unreasonable, and Brummell chose not to pursue a written complaint with respect to Daniels' alleged unfair treatment towards her. Deposition Transcript of John Carlevatti at p. 54, 48, 32.

Brummell continued to look for employment outside of the Webster School District, and in October, 2005, had an interview with A & E Transportation. Deposition Transcript of Terry Brummell at p. 108. On October 17, 2005, Brummell called in sick to work. That same day, however, she signed a tax withholding form with A & E Transportation indicating that she would begin work for them on October 31, 2005.[2]  See Exhibit T to the Affidavit Colleen Heinrich. The next day, on October 18, 2005, plaintiff wrote a

---

[2] The fact that plaintiff filled out employment forms with A & E Transportation on October 17, 2005 contradicts her deposition testimony, which was given under oath, that she had not received an offer of employment prior to resigning from the Webster Central School District. Plaintiff testified that she had interviewed with A & E prior to resigning, but "didn't have the job" before she resigned. Deposition Transcript of Terry Brummell at p. 108, lns 13-17. She further testified that she received an offer of employment at "[t]he end of October," and was "panicking" because she was worried about getting the job. Deposition Transcript of Terry Brummell at p. 108, lns 10, 19-20.

letter to the Webster School Board indicating that she was resigning from her employment effective October 31, 2005.

## DISCUSSION

### I.   Defendant's Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought.  <u>Scott v. Harris</u>, ____ U.S. ___, ____; 127 S.Ct. 1769, 1776 (2007) .  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  <u>Scott</u>, ____ U.S. at ____; 127 S.Ct. at 1776 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986).

### II.   Plaintiff has failed to establish a Prima Facie Case of Retaliation

Although Plaintiff's Complaint suggests causes of action sounding in gender discrimination, including claims of disparate treatment, hostile work environment and constructive discharge (<u>See</u>

Complaint at ¶¶ 20, 21, plaintiff now acknowledges that her only cause of action in this suit is for retaliation under federal and state law.  Because I find that plaintiff has failed to state a claim for retaliation, I grant defendant's motion for summary judgment, and dismiss plaintiff's complaint with prejudice.

Plaintiff claims that she was retaliated against by the defendant for complaining of gender discrimination.  She claims that after she complained of unfair treatment, her supervisor began complaining about her work performance, and she was offered a transfer or resignation from her employment.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and adverse action.  Burlington Northern & Santa Fe Railway Co. V. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2nd Cir. 1995) (citations omitted).  Should the plaintiff state a claim for retaliation, the defendant may then articulate a non-discriminatory, legitimate reason for taking the action complained of, and then the burden shifts to the plaintiff to show that the

employer's articulated reason is both untrue and a pretext for the true retaliatory motive. Id.

A.  Plaintiff has failed to allege that she engaged in a protected activity under Title VII.

Title VII prohibits retaliation by an employer against an employee in cases where the employee has engaged in protected activity under the statute.  "Protected activity" includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII. 42 U.S.C. 2000e-3(a). See also, Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2nd Cir., 2000)("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination.")  Specifically, Title VII provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. 2000e-3(a).

In the instant case, plaintiff has failed to establish that she engaged in a protected activity under Title VII.  Although the record indicates that Brummell complained to Daniels about his

treatment towards her in May of 2005; complained to Carlevatti about Daniels in September, 2005; and complained again to Daniels in September or October 2005, there is no admissible evidence in the record suggesting that the plaintiff complained of gender discrimination (or any other discrimination made unlawful by Title VII) on any of these occasions.

According to the plaintiff's deposition testimony, and the deposition testimony of Scott Daniels, Brummell did not complain of gender based discriminatory treatment in May of 2005.   Rather, Brummell testified that certain incidents, including Daniels' rearrangement of files of her desk, and removal of certain signs from her desk area, prompted her to approach Daniels directly, and ask "Scott, I don't know why you don't like me . . . ." Deposition Transcript of Terry Brummell at pp. 55-57.  Brummell believed that she was being treated differently than other employees, Deposition Transcript of Terry Brummell at p. 63, and told Daniels during the meeting that "you treat me differently than you do other people around here.  I don't know what I'm doing wrong, and if I don't know what I'm doing wrong, I don't know how to fix it." Deposition Transcript of Terry Brummell at p. 64.  Daniels confirmed that Brummell approached him in May of 2005 and complained that she did not like the way he was treating her.  Deposition Transcript of Scott Daniels at p. 43.

Brummell's complaints, however, do not constitute protected activity.   At no time did Brummell allege that she was being treated differently because she was a woman, or that Daniels treated her or other women differently because of their gender. Absent a claim of unlawful discrimination, general complaints about employment concerns do not constitute protected activity under Title VII.   See   Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C.Cir., 2006)(employee complaint that she suffered from embarrassing, humiliating and insulting treatment failed to establish that she engaged in protected activity where there was no allegation that the treatment was motivated by a discriminatory animus).   See also, Ochei v. Coler/Goldwater Memorial Hosp., 450 F.Supp.2d 275, 287 (plaintiff's general complaints about her working conditions did not constitute engaging in a protected activity where plaintiff did not allege that she was a victim of discrimination); McMillan v. Powell, 526 F.Supp.2d 51, 55 (D.D.C., 2007)(employee's complaint's regarding supervisor's negative attitude towards her not protected activity where complaints failed to allege that discrimination was the basis for supervisor's attitude); International Healthcare Exchange, Inc. v. Global Healthcare Exchange, LLC, 470 F.Supp.2d 345, 357 (S.D.N.Y., 2007)(to be considered protected activity, the employee's complaint must put the employer on notice that discrimination prohibited by Title VII is occurring);   Holt v. Roadway Package Systems, Inc.,

506 F.Supp.2d 194, 206 (W.D.N.Y., 2007)(Larimer, J.)(employee's claim that supervisor was "out to get him" did not constitute protected activity as complaint did not allege discriminatory animus for supervisor's actions).

In her affidavit submitted in opposition to defendant's motion for summary judgment, plaintiff alleges that she did complain to Daniels that he treated her differently than male employees.  See Affidavit of Terry Brummell at ¶ 105.  It is well settled, however, that a plaintiff "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." Hayes v. New York City Department of Corrections, 85 F.3d 614, 619 (2nd Cir. 1996)(citations omitted).  Indeed, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." Hayes, 85 F.3d at 619.  Though plaintiff testified at length and under oath at her deposition, she never claimed that she complained to Daniels in May of 2005 that she was being treated differently than male employees.  Rather, she testified that she felt she had been treated differently than all other employees, men and women included.  Accordingly, plaintiff cannot rely on her contradictory affidavit to create an issue of fact on this point.

In mid-September, 2005, after plaintiff complained to Daniels' supervisor John Carlevatti that she had been asked to falsify test

results for John DeRoo, plaintiff, for the first time, complained to Carlevatti regarding Daniels' treatment of her.   Deposition Transcript of John Carlevatti at p. 42.   According to Carlevatti, Brummell complained that Daniels treated her differently than other employees.   Deposition Transcript of John Carlevatti at p. 34. Again, however, Brummell made no claim that she was treated differently because of her gender.   Rather, plaintiff complained of several issues, including the claim that Daniels and several of her co-workers who didn't like a particular bus driver who worked for the District, called the driver "Special-K" because he had once made a "K-turn" with his bus under a bridge and got stuck. Deposition Transcript of Terry Brummell at p. 123.   According to the plaintiff, she believed this was insulting.   Deposition Transcript of Terry Brummell at p. 126.   Clearly, however, such a complaint is not protected activity under Title VII, as it does not relate to discrimination based on any attribute protected under Title VII.   <u>Kelley v. Sun Microsystems, Inc.</u>, 520 F.Supp.2d 388, 403 (D.Conn., 2007)(to constitute protected activity, complaint must be directed to activity that is prohibited by Title VII).

The only time plaintiff mentioned gender to Carlevatti was when she attempted to explain to Carlevatti that the work environment at the district could be "disruptive" or "unpleasant" because of:

> issues about people who didn't see things all
> the same, or weren't all the same, or the same

> color, or the same ethnicity, or the same sex,
> or many – many different things.   People's
> weight.   People's – a lot of things.   And I
> was just trying to explain that there were
> people there that were unhappy, and that was
> why.

Deposition Transcript of Terry Brummell at p. 123-124.   This complaint, however, even considered in the light most favorable to the plaintiff, fails to establish that she complained to Carlevatti that she was being discriminated on the basis of her gender.   See Van Orden v. Wells Fargo Home Mortg., Inc., 443 F.Supp.2d 1051, 1064-65 (S.D.Iowa, 2006)(complaint as to unfair treatment of members of a protected class insufficient to establish protected activity absent claim that the treatment resulted from a discriminatory animus); Wynn v. Paragon Systems, Inc., 301 F.Supp.2d 1343, 1354 (S.D.Ga., 2004)(complaint that supervisor's behavior was disrespectful, harassing, and induced stress not a protected activity where no claim was made supervisor was motivated by discrimination).

While it is true that a plaintiff need not explicitly allege a violation of Title VII for his or her conduct in making a complaint about working conditions to be considered protected activity, (See Kelley, 520 F.Supp.2d at 403 (employee not required to use "legal terms or buzzwords" when complaining of discrimination)) the plaintiff must complain of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated

against on the basis of race, gender, national origin, or any other characteristic protected by Title VII.  International Healthcare Exchange, Inc., 470 F.Supp.2d at 357.  In the instant case, Brummell complained to Carlevatti primarily about one employee being called an allegedly derogatory name, and employees in her department who were allegedly unhappy because the employees didn't see things the same way because they were of different races, genders, national origins or weights.  There is no admissible evidence in the record suggesting that plaintiff ever told Carlevatti or Daniels that she felt that she was treated differently in her department because she was a woman.  Indeed, it was Daniels who had recommended Brummell (a woman) and another female employee for promotions when Brummell accepted the position of Head Bus Driver/ Safety Coordinators in May, 2003.  See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 138 (2nd Cir. 2000)("When the same actor hires a person already within the protected class, and then later fires that same person, 'it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'" (citing Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir.1997))); Thomas v. iStar Financial, Inc., 438 F.Supp.2d 348, 361 (S.D.N.Y., 2006).

Following plaintiff's complaints to Carlevatti, Carlevatti conducted an investigation of her concerns, and held a meeting with Brummell and Daniels.  There is no evidence to suggest that

plaintiff complained of discrimination at this meeting. Upon conclusion of the investigation, Carlevatti determined that Daniels' expectations for Brummell's job performance "were not unreasonable." Deposition Transcript of John Carlevati at p. 45, ln. 10.

Finally, Brummell contends that in late September or early October, 2005, after she met with Carlevatti, she had another meeting with Daniels. According to the evidence in the record, however, plaintiff did not complain of discrimination during this meeting. Deposition Transcript of Terry Brummell at p. 116-118. Accordingly, plaintiff did not engage in any protected activity during this meeting.

Because plaintiff has failed to establish that she engaged in any protected activity with respect to her employment complaints, plaintiff has failed to establish a prima facie case of retaliation.

B.   Plaintiff has failed to establish that she was subjected to an adverse employment action or actions which would dissuade a similarly-situated reasonable employee from making a charge of discrimination.

To state a prima facie case of retaliatory discrimination, in addition to establishing that he or she engaged in protected activity, a plaintiff must also establish that he or she suffered an adverse employment action, or was subjected to action that would dissuade a reasonable worker from making or supporting a charge of

discrimination.   Burlington Northern & Santa Fe Railway Co. V. White, 548 U.S. 53, 68 (2006).  In the instant case, plaintiff has failed to establish that any adverse employment action was taken against her or that any action that would dissuade a reasonable employee from making or supporting a charge of discrimination was taken against her.

As stated above, I find that the plaintiff has failed to establish that she engaged in any protected activity with respect to her employment complaints made in May, September, or October of 2005.  Assuming, arguendo, however, that the plaintiff could establish that she engaged in a protected activity, I find that she has failed to establish that she was subjected to any adverse employment action, or any act that would dissuade a reasonable employee from making a claim of discrimination, as a result of engaging in protected activity.

Plaintiff alleges in her Complaint that Daniels "singled her out" from other employees since 2003, when she was promoted (upon Daniels' recommendation) to the position of safety coordinator. Preliminarily, because Daniels supervised both male and female employees, plaintiff's allegation that she was "singled out" from other employees does not, absent a claim that she was singled out because of her gender, allege a claim of discrimination.  Moreover, for purposes of plaintiff's retaliation claim, her allegations that Daniels treated her differently than all other employees for two

years prior to her first alleged complaint of discrimination, fail as a matter of fact and law to state a claim for retaliation.  It is axiomatic that retaliatory activity cannot occur prior to the incident upon which the retaliation is predicated.  Accordingly, plaintiff's complaint that Daniels' treated her differently prior to her alleged complaint of discrimination fails to state a claim of retaliation.

Plaintiff also contends in her complaint that items on her desk were removed or repositioned without her consent while she was absent.  These acts too, took place prior to her first meeting with Daniels during which she complained of his treatment towards her.  Again, because these acts took place prior to any alleged protected activity, they cannot form the basis of a retaliation claim.

Plaintiff's complaint also alleges that she was subjected to a hostile work environment after she complained of unfair treatment to Daniels and Carlevatti, and that as a result of the alleged hostile environment, she was forced to resign her employment.  There is no evidence in the record, however, that plaintiff was subjected to such conditions, and plaintiff has formally withdrawn any claim of a hostile working environment or constructive discharge.  Indeed, the record reveals that Brummell resigned from her job only after securing employment with another employer.

Plaintiff alleged in her deposition testimony that she was treated differently than other employees because she did not

receive a flat screen computer monitor, while other employees did. Deposition Transcript of Terry Brummell at p. 57. This allegation, however, fails to allege discrimination based on her gender. Initially, plaintiff does not allege that the monitors were being distributed on the basis of gender. Moreover, she admitted that only she, and a male employee, did not receive monitors. Deposition Transcript of Terry Brummell at p. 57. Therefore, plaintiff's allegations reveal that both male and female employees received flat screen monitors, and also that a male and female employee did not receive upgraded monitors. With respect to her claims of retaliation, this allegation again fails to allege retaliation because the allegedly retaliatory conduct (replacement of monitors) occurred prior to her first allegation of different treatment. Deposition Transcript of Terry Brummell at p. 57, 60-61.

Plaintiff complains that she was denied overtime opportunities as a result of her complaints to Daniels in the Spring of 2005. Plaintiff's deposition testimony, however, reveals that her overtime was limited prior to her first meeting with Daniels. Deposition Transcript of Terry Brummell at p. 69, 60-61.

Plaintiff contends that after she complained of Daniels' treatment of her to Carlevatti, Daniels began to criticize her work performance. In support of her claim, she contends that prior to her complaints in September, 2005, she had never been written up

for any work performance issues, but that after her complaints, Daniels began to criticize her performance.  Plaintiff, however, has failed to allege or produce any evidence that she was written up for any work related issues after her complaints.  Nor was plaintiff fired, demoted, transferred, or given a reduction in pay. Indeed, no employment action was taken against her.  While there is no doubt that sudden criticisms of an employee's work performance made after the employee has engaged in protected activity is the archetype form of retaliation, it is also true that an employee who engages in protected activity is not immune from good-faith criticism of his or her work.  See e.g. Orluske v. Mercy Medical Center-North Iowa, 455 F.Supp.2d 900, (N.D.Iowa, 2006)(engaging in protected activity does not insulate employee from discipline). Accordingly, courts look to the nature of the alleged retaliatory act in determining whether or not such activity constitutes unlawful retaliation.  Acts that do not lead to materially adverse employment actions, or that would not dissuade a reasonable employee from making a complaint of discrimination, will not be considered retaliatory acts.  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999)(reprimand may constitute adverse employment action depending on context and severity of the reprimand);  Brierly v. Deer Park Union Free School Dist., 359 F.Supp.2d 275, (E.D.N.Y., 2005)(reprimands that do not lead to materially adverse employment action do not constitute retaliatory activity);  Dunphy v. Delta

<u>Airlines, Inc.</u>, 290 F.Supp.2d 311 (E.D.N.Y., 2003)(rude comments to, and criticism of employee following employee's claim of discrimination not retaliatory where supervisor's comments amounted to mere annoyances, and employee was not formally disciplined). <u>Tillman v. Pepsi Bottling Group, Inc.</u>, 538 F.Supp.2d 754 (D.Del., 2008).

In the instant case, Daniels' alleged criticism of Brummell occurred when Carlevatti questioned him about plaintiff's complaints.  Daniels did not make any formal or written complaint or criticism about Brummell's work performance, and no action was taken against Brummell as a result of Daniels' statments.  Under these circumstances, I find that the criticism complained of by Brummell does not constitute retaliatory activity.

Finally, plaintiff contends that after she complained of unfair treatment to Daniels and Carlevatti, she was offered a demotion or a resignation.  The record reveals, however, that those offers were made in response to plaintiff's desire not to work for Daniels.  Neither a transfer nor a resignation was forced upon the plaintiff, and the options were made in response to plaintiff's stated desire not to work for Daniels, not as retribution for engaging in protected activity.

The Plaintiff has failed to allege that any adverse employment action was taken against her at any time.  She has failed to allege that she was transferred, demoted, fired, or that her pay or any

benefits were reduced in any way. Several of the acts that plaintiff complains of, including denial of overtime opportunities, moving of items on her desk, removal of items from her desk, and not receiving equipment upgrades, occurred prior to her complaints, and therefore cannot be construed as retaliatory actions. The remaining claim, that her work was criticized by Daniels only after she complained about him, fails to state a claim because Daniels' alleged complaints were not formal complaints, and had no bearing on any condition of plaintiff's employment.

III. <u>State Law Claims</u>

Claims brought under the New York Human Rights Law are analytically identical to claims brought under Title VII. <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708 (2nd Cir. 1996). <u>See Haywood v. Heritage Christian Home, Inc.</u>, 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Larimer, C.J.)(Noting that both claims are governed by <u>McDonnell Douglas</u> standard.). Accordingly, for the reasons stated above, defendant's motion to dismiss plaintiff's state law retaliatory discrimination claims under the New York Human Rights Law is granted.

CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment, and dismiss plaintiff's Complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
Michael A. Telesca
United States District Judge

DATED:    Rochester, New York
          January 29, 2009